WASHINGTON A. ROEBLING and others, Respondents, *v.* WILLIAM BUTLER DUNCAN and others, Appellants.

*Fraud — concealment of bankrupt condition — Representation.*

Although a banker or trader in embarrassed circumstances, who is struggling in good faith to retrieve his fortunes, is not compelled to disclose the fact of his embarrassment to persons dealing with him; yet, if he is at the time hopelessly insolvent, he is guilty of a fraud, if, by virtue of his supposed solvency and well established credit, he contracts obligations which he cannot reasonably expect to pay.

Persons dealing with a banker in good faith, and in reliance upon his apparent solvency, will be protected against the consequences of the concealment by the banker of his real condition, if he is at the time not merely insolvent but bankrupt, and where such concealment involves a degree of bad faith from which the law will imply fraud, although no actual representation has been made.

Appeal from an order made at Special Term, denying a motion to vacate an order of arrest.

The action was brought by the plaintiff against the defendants, copartners carrying on a business as bankers in the city of New York, under the firm name of Duncan, Sherman & Co., upon a bill of exchange, drawn by the defendants, July 21, 1875, upon the Union Bank, of London, for £296 3s. 2d. sterling.

An order of arrest was obtained therein against the defendants. The defendants, in the affidavit on which the motion to vacate the order of arrest was made, among other things, alleged as follows:

"And this deponent further says, that the said firm of Duncan, Sherman & Co., composed of the defendants in this action, did, on the 27th July, 1875, stop their payments and execute and deliver a

general assignment of all their estate and property of every description to William D. Shipman, Esq., counselor at law, upon trust to get in the said estate and convert the same into money, and apply the proceeds to the payment of all the debts of the defendants according to law, without any preference whatever; that the defendants were led to this course by the information received on the morning of that day by telegram from Europe, that negotiations there pending with a view to the permanent relief of the defendants, and to prevent the necessity of any interruption whatever in their business, had failed of success; that shortly before the sale of the bill of exchange in the complaint mentioned, deponent had returned from Europe, and about the time of said sale was engaged in an examination into the financial affairs of his firm. He had discovered that they were in an embarrassed condition, but was at the same time actually engaged in negotiations for additional means which would justify the defendants in continuing their business, a course which would be for the best interests of all concerned in their estate, and that deponent had strong hopes of accomplishing that result; and that it was not until the morning of the twenty-seventh of July, that from the advices received from Europe he became satisfied that the pending negotiations could not be carried to a successful conclusion; and that immediately upon receiving such advices he took the course which seemed to him most for the interest of all his creditors; that pending the said negotiations, and while the prospect seemed in favor of their successful termination, it was necessary that no change in their manner of doing business should be made, as the effect of such change would have been to render nugatory the efforts on foot for the permanent relief of the defendants.

" And this deponent further says, that it is not true that on the 21st July, 1875, the defendants, or either of them, knew or believed that they were hopelessly insolvent, or had exhausted every avenue of relief, or possessed no financial resources whatever.

" And that it is not true that when the bill of exchange in the complaint mentioned was sold, the defendants, or either of them, knew that the same would not be paid or honored, or that they did not or would not have sufficient funds at the Union Bank to meet and pay the same. * * *

" And this deponent denies that he or his co-defendants, or either of them, ever made any pretense on the subject of their solvency, or perpetrated any cheat or fraud upon the. plaintiffs, or upon any other person, or by any trick or device whatever obtained moneys of the plaintiffs."

The court, from the papers used on the motion, found that when they sold the bill in question the defendants' liabilities amounted to about $5,000,000, and their assets to about $2,000,000.

*Joseph Larocque*, for the appellant.

*Henry H. Morange*, for the respondent.

DAVIS, P. J.:

The court at Special Term, in deciding the motion, pronounced the following opinion :

" BARRETT, J. The rule of law which governs in cases of this kind is well settled. The question is one of intent, to be ascertained by an inquiry as to whether the debtor had any reasonable expectation of meeting his obligations at maturity. If he had such reasonable expectation, then it is the case of a legitimate effort by an embarrassed person, be he trader or banker, to retrieve his fortunes ; and there the law is not so strict as to require a disclosure which would probably defeat the effort. Otherwise it falls within that other class of cases where the merchant or trader, finding himself hopelessly insolvent and with stoppage imminent, without disclosing his situation, and in virtue of his supposed solvency and well established credit, contracts fresh obligations which he cannot reasonably hope to meet; and this the law condemns as fraudulent. Now, in the case at bar, the defendants were hopelessly insolvent when they sold the bill in question; that is, their liabilities amounted to about $5,000,000, their assets to less than $2,000,000. They deny knowledge of insolvency, but admit knowledge of embarrassment.

Six days later they stopped payment, and made a general assignment. Under these circumstances, it became very clearly the duty of the defendants, especially after the admonition of Mr. Justice LAWRENCE, to lay before the court all the facts upon which they

based their sanguine expectations. This they have failed to do. They say that they were negotiating for additional means which would have insured their ability to continue, and that they had strong hope of accomplishing that result. But they furnish no facts upon this head. They do not say with whom they were negotiating, nor for what sums, nor do they give letters, telegrams, or other particulars. It was for the court to say, when the facts were presented, whether the hopes and expectations of which the defendants speak were reasonable and real. It certainly will not do for a firm which owes $5,000,000, and has less than $2,000,000 of assets, when taxed with continuing after knowledge of that state of things, to rely upon generalities. Again, on the question of knowledge, there is unfortunately the same reticence. The defendants admit that about the time of the sale of the bill they were engaged in an examination of their financial affairs, and had discovered that they were embarrassed, though not hopelessly insolvent. The court could better have sustained that view of the case, if the defendants had given the facts as to such examination and discoveries. Presumptively such examination disclosed the truth, viz., that the defendants could not pay forty cents on the dollar. If it did not, if there was any mystery about their affairs which could not be immediately unraveled by an examination of their books, or any peculiarity about their assets which rendered at least an approximately accurate valuation impossible, the defendants should have shown what the difficulty was. No light is thrown upon the subject by simply declaring that they found themselves embarrassed. That, again, was a matter for the court. What the defendants *in fact* found was, that they owed so much, and that they had such and such assets with which to pay. It was their duty to give the court, as nearly as might be, a photographic view of this examination, and of all the facts tending to justify the assumption of mere embarrassment, which might be relieved by the acquisition of additional means. It is true that there is an averment in the defendants' affidavits that the realizable value of assets did not "*necessarily*" appear upon the face of their books, and that without a close examination of the several accounts the value of assets or amount of losses would not "necessarily".appear. This is a general statement which is true of almost every firm, but

whether, or to what extent, the defendants here, in continuing after such examination, were misled by any such state of things is not detailed. It thus appears that when the defendants sold the bill, their liabilities exceeded their assets by upwards of $3,000,000, and that they had made an examination of their condition which ought to have disclosed that fact, and the consequent futility of negotiating for the enormous sum, which would have been necessary to have placed them upon a reasonably sound basis. Under such circumstances, therefore, it was their duty to have stopped at once; and now, when they seek to justify their continuance until the failure of the negotiations for additional means, they should have spread before the court, fully and explicitly, the particulars of the examination which they had made, the assets which it showed, the value which they placed thereon, the facts upon which they grounded such valuation, and, as a *sequitur*, what deficiency there then *appeared to be* between the liability of the defendants and means of payment. If, upon such facts having been presented, the court had been of opinion that as the defendants were then situated (that is, treating them as honest men of fair judgment, looking at their affairs according to the best lights then afforded to them), they were justified in believing that theirs was a case of mere embarrassment, and not of complete insolvency, it would have justified them in continuing their business without disclosing their condition. But even then, if the embarrassment appeared to be of so grave a character that without additional means there was no prospect of retrieving themselves, the court, before finally justifying the incurring of fresh obligations (even pending the negotiations), would have been compelled to ask for full and precise information as to the amount necessary to be had, and the grounds upon which the defendants based their hope of obtaining it; in fact, for the details of such negotiations. The explanations made by the defendants, with respect to the state of the account with the Union Bank of London, are sufficiently full. They do not, however, alter the effect of the failure to furnish the facts which have been discussed. Of course, the payment of the bill did not altogether depend upon the fact, that the defendant had money or credit with the drawee. It depended rather *upon their continuance*. In other words, they were not justified in the expectation that the bill would be honored

merely because the drawees had funds in their hands, unless they were also justified in the expectation of success in the negotiation for additional means, and in the belief that such additional means would enable them to continue their business without interruption. Indeed, as they themselves say, the cause of the failure of the Union Bank of London to honor their bills, including that now in question, was the telegraphic report in London of their stoppage and of the execution of their assignment. The court is, therefore, constrained to hold, as the necessary result of the conceded facts, calling as they do for clear and precise evidence (which has not been furnished) of other facts sufficient to justify the alleged expectation of continuance, that the defendants must have known, when they sold the bill, that before it reached London they would be compelled to close their doors, and that a refusal to accept would be the result. It follows, therefore, without the necessity of considering the other branch of the case, that the motion to vacate the order of arrest must be denied."

A careful examination of the case has led us to substantially the same conclusion expressed in this opinion. It seems unnecessary, therefore, that we should do more than simply express our concurrence in the views and conclusions of the opinion of the Special Term. The case stands upon a few bold and striking propositions: First. That at the time of sale to plaintiff of the bill of exchange, the defendants were, in fact, utterly and hopelessly insolvent. Their indebtedness was about $5,000,000. Their nominal assets did not exceed $2,000,000, and were in fact of much less value. They probably did not know the extremities of their condition, but enough is shown to establish that they did know that their condition was one of utter insolvency, unless they could realize relief to a very large amount from sources which they say were in contemplation. That relief was contingent. It wholly failed, and it seems to us that it must have been at all times so doubtful in character that the defendants had no right, with what knowledge they must have possessed of the hopeless condition of their own affairs, to force upon persons who dealt with them in good faith, with full confidence in their entire solvency, the chances of loss upon the failure of their alleged expectations. Certainly they were bound to show to the court, in the most clear and convincing

manner, the basis of their expectations, and that they had just reasons for relying upon them. The opportunity was twice afforded them to do this on the two motions in this case. We agree with the court below, that the general statements were not sufficient under the circumstances. Dealers with bankers, while acting in good faith in reliance on their apparent solvency, must be protected against the consequences of the concealment of their real condition when such condition is not merely insolvency, but utter bankruptcy, and where such concealment involves a degree of bad faith from which the law will imply fraud, although no actual representation be made.

We think the order should be affirmed.

DANIELS, J., concurred; BRADY, J., concurred in the result.

Order affirmed.